UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JANET TOMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-050-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE STANDARD LIFE INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY OF NEW YORK d/b/a The | ) | **AND ORDER** |
| Standard, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Janet Tompkins' motion to remand [Record No. 8] this action involving long term disability ("LTD") and life insurance coverage. Tompkins alleges that the Defendant The Standard Life Insurance Company of New York ("Standard") has not properly demonstrated diversity jurisdiction exists under the facts presented. Resolution of this motion turns on whether the limit of the life insurance policy or the sum of the premium payments should be considered in determining the amount in controversy. The Court concludes that value of the object of the litigation is the limit of the insurance policy; therefore, the required amount has been shown and the motion to remand will be denied.

**I.**

Tompkins was formerly employed as a teacher in Lexington, Kentucky by the Fayette County Public Schools ("FCPS"). [Record No. 1-4, p. 1] As a benefit of her employment, Tompkins obtained $100,000.00 in life insurance coverage under a Group Life Insurance Policy ("Group Life Policy") and disability insurance coverage under a Group Long Term Disability Insurance Policy ("Group LTD Policy"). [Record No. 1-4, p. 1] Tompkins alleges that she became disabled under the terms of the Group LTD Policy approximately four years ago (April 30, 2011). Standard initially approved Tompkins' claim for LTD benefits, but later terminated her benefits after finding that Tompkins was no longer disabled under the terms of the Group LTD Policy.

Tompkins filed a Complaint in state court on September 29, 2014, alleging that Standard improperly terminated her LTD benefits.[1] [Record No. 1-1] While the exact amount claimed for LTD benefits is disputed, the parties agree that it is less than the $75,000.00 sum required for diversity jurisdiction.[2] On February 20, 2015, Tompkins filed a Second Amended Complaint which included a claim for reinstatement of her coverage under the Group Life Policy. [Record No. 1-4] She alleges that she was entitled to the waiver of the premium benefit under the Group Life Policy. [Record No. 1-4, p. 3] The waiver of the premium benefit is a means to continue coverage under the Group Life Policy where an

---

[1] The parties do not allege that Tompkins' claims are covered under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*.

[2] Tompkins claims a maximum total amount of benefits of $35,803.33. [Record No. 1, p. 3] Standard contends that amount should be reduced, or offset, by other income received during the relevant time period. [*Id.*]

insured is disabled and unable to work or pay the premium that otherwise would be required. [Record No. 1-8, pp. 11, 20–21, 29–30] Standard determined that Tompkins did not qualify for this benefit, and terminated her coverage under the Group Life Policy. [Record No. 13-4] Standard timely removed the matter to this Court on February 27, 2015, alleging that the new claim regarding the Group Life Policy fall within this Court's diversity jurisdiction. [Record No. 1]

**II.**

A case filed in state court is removable only if it could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[Section] 1441 . . . authorizes removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in federal district court."). The burden of establishing diversity jurisdiction is on Standard as the removing party. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). The amount-in-controversy is assessed as of the time the complaint is filed, *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000), or, in the case of removal, when the removal notice is

filed. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Under 28 U.S.C. § 1446(c)(2)(A)(ii), a defendant may assert the amount-in-controversy in its notice of removal if removing from a jurisdiction where "[s]tate practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." Removal is proper upon the defendant's assertion of the amount-in-controversy "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Id.* § 1446(c)(2)(B).

### III.

Because the parties do not dispute that they are citizens of different states under 28 U.S.C. § 1332, the only relevant issue is whether the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Standard alleges that the full Group Life Policy limit of $100,000.00 is in dispute. Tompkins is not currently covered under the Group Life Policy, but seeks to reinstate her life insurance coverage in the amount of $100,000.00 through her claim in this litigation. She contends that the Court should consider the amount of the premiums waived through the waiver of the premium benefit, rather than the limit of the policy, for purposes of determining the amount in controversy. The parties rely on the same cases, but contend that they should be applied to reach opposite results. Under these facts, the policy is at issue and the limit of that policy is the proper basis for determining the amount in controversy.

In *Freeland,* the plaintiffs had an automobile policy in effect at the time of the accident, which included $25,000.00 in uninsured motorists ("UM") coverage. *Freeland v.*

*Liberty Mut. Fire Ins. Co.*, 632 F.3d 250 (6th Cir. 2011). The plaintiffs filed a declaratory judgment action alleging that the policy should have $100,000.00 in UM coverage due to an error in the coverage disclosure selection form. *Freeland*, 632 F.3d at 252. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Freeland*, 632 F.3d at 253 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (internal quotation marks omitted). Thus, if the plaintiffs prevailed, they would have $100,000.00 in UM coverage. *Id.* If the plaintiffs did not prevail, they would continue to be entitled to $25,000.00 in UM coverage. The "value of the consequences of the litigation," then, was $75,000.00. *Id.* (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998)). The Sixth Circuit found that the amount in controversy was $75,000.00, not one penny more, and directed that the matter be remanded to state court for lack of jurisdiction. *Id.*

In *Harmon*, the Court considered the limits of the policy for purposes of determining jurisdiction because whether the defendant was entitled to coverage was the question presented by the litigation. *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 417 (6th Cir. 1996). There, the insurance company discovered that the defendant/insured, had made false statements regarding his medical history while the company was investigating the defendant's disability claim. *Harmon*, 88 F.3d at 416. The company filed suit requesting that the disability policy be rescinded as invalid. The court concluded that, with respect to insurance policies providing disability benefits, the "future potential benefits may be

considered in computing the requisite jurisdictional amount" where the validity of the insurance policy is involved. *Harmon*, 88 F.3d at 416. In other words, the face value of the policy may be considered where coverage itself is the issue. By contrast, future potential benefits are not to be taken into consideration "where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy." *Harmon*, 88 F.3d at 416. The court concluded that the "case concerns the validity of defendant's entire policy, not just [the insurer's] obligation with respect to particular of defendant's disability benefits." *Harmon*, 88 F.3d at 417. Thus, the limits of the policy were considered in determining the amount in controversy.

In *Harmon* and *Freeman*, the value of the litigation was found in coverage under the policy and the potential of the full coverage of the policy as a future potential benefit. This is in contrast to a claim for benefits under a policy, where the policy itself is not at issue. In this circumstance, the controversy concerns merely the extent of the insurer's obligation with respect to a policy of insurance in effect. *See Harmon*, 88 F.3d 416–17. Because coverage in this matter rests on application of the policy (*i.e.*, the waiver of premium benefit) to a particular situation, Tompkins argues that her claim falls within the latter category. But this application misses the thrust of the holdings of these cases. The object of Tompkins claim, as it relates to the Group Life Policy, is to determine whether she may be covered. While resolution of this issue will require analysis and application of the premium waiver benefit under the terms of this policy, the ultimate question is not whether Standard must pay a claim

under the policy, but whether Tompkins is entitled to possible future benefits under the policy.

Tompkins argues that the dispute is "merely whether insurance premiums should have been waived due to Tomkins' disability" and that Standard has not shown that the "*validity* of the life insurance policy is actually in dispute." [Record No. 8-1, p. 6 (emphasis in original)] Placing utmost importance on the use of the term "validity," Thompson argues that the Group Life Policy was valid at the time that the waiver benefit should have been applied. The principle with greater relevance, however, is whether coverage under the policy, or the full value of the policy limit, is the value of the consequences of the litigation.[3]

Relying on *Withrup v. State Farm Mut. Auto. Ins. Co.*, No. 3:14-cv-1303, 2015 WL 419064, at *2 (M.D. Fla. Feb. 2, 2015), Tompkins argues that value of the consequences of the litigation is "only the value of having Tompkins' life insurance premiums waived." [Record No. 16, p. 3] However, application of the premium waiver provision of the Group Life Policy, as Tompkins requests in her Complaint, confers more than the value of the premiums because it operates to extend coverage under the policy. Moreover, *Withrup* is consistent with application of the policy limits as the amount in controversy. Relying on the

---

3 Summarizing the holdings of several of the cases discussed herein, a district court stated:

> While these cases do not chart a clear path, some common sense principles come through: When the validity of an insurance policy is in dispute, a finding that it is valid may, or may not, bring back to life all the coverage possible under the policy. If the object of the litigation is to re-establish the operation of the policy for all purposes, the full face value of the policy is at stake for the insurance company, and is, therefore, the amount in controversy. However, if something less than the full reinstatement of the policy is the plaintiff's goal, then the insurance company likely has less at stake.

*Porter v. American Heritage Life Ins. Co.*, 956 F. Supp. 2d 344, 348 (D.R.I. 2013).

Sixth Circuit's decision in *Freeland*, the district court found that the "object of the litigation is to determine whether UM coverage is in force," and, therefore, the amount in controversy was the amount of potential coverage that the plaintiffs would receive if they were to prevail. *Withrup*, 2015 WL 419064, at *3.

Whether coverage is at issue due to false statements by the insured, *id.*, problems with the disclosure forms provided, *Freeland*, 632 F.3d at 251–52, non-payment, *see Darbet Inc. v. Bituminous Casualty Corp.*, 792 F.Supp. 487, 488–89 (S.D.W.Va. 1992), or some other basis, the value of the consequences of the litigation is the face value of the policy. *See Lowe v. Metro. Ins. & Annuity Co.*, No. 12-2868, 2013 WL 1947167, at *3 n.2 (W.D. La. May 9, 2013) (holding that the amount in controversy is $250,000.00 because "if Lowe should succeed on the merits, the $250,0000 life insurance policy will continue in effect. If, however, Lowe is unsuccessful and Metropolitan cancels the policy, Lowe (or the beneficiary named in the policy) will lose the $250,000."); *Stephenson v. Equitable Life Assurance Soc'y of the United States*, 92 F.2d 406, 410 (4th Cir. 1937) (finding the policy limits were the amount in controversy where "the relief asked is not merely the recovery of installments in default, but . . . to establish the status of a contract of ordinary life insurance for $5,000, which has been declared lapsed . . ."); *Bell v. Philadelphia Life Ins. Co.*, 78 F.2d 322, 323 (4th Cir. 1935) (finding that the full face value of the life insurance policy was the amount in controversy where the plaintiff sought to "have the policy declared in full force and effect upon an allegation that the defendant declared it lapsed for nonpayment of the

premium extension note."); *Pepper v. State Farm Mutual Auto. Ins. Co.*, No. 2:12-cv-1459, 2012 WL 6554036 (S.D. W.Va. Dec. 14, 2012).

If Tompkins prevails, she (or the beneficiary named in the policy) will be entitled to $100,000.00 in insurance coverage under the Group Life Policy. If she does not prevail, she will not be entitled to potential future benefits of $100,000.00 under the terms of the Group Life Policy. Thus, the amount in controversy exceeds $75,000.00 and the requirements for diversity jurisdiction have been shown to exist. Accordingly, it is hereby

**ORDERED** that Plaintiff Janet Tompkins' motion to remand [Record No. 8] is **DENIED**.

This 30th day of April, 2015.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge